## Vukovich v. Youngstown
*[Cite as 7 AOA 251]*

*Case No. 88 CA 198*
*Mahoning County, (7th)*
*Decided September 25, 1990*

*Avetis Darvanan, 802-804 Mahoning Bank Building, Youngstown, Ohio 44503, for Plaintiff-Appellee.*

*Edwin Romero, Director of Law, Cheryl L. Waite, Assistant Law Director, City of Youngstown, 26 S. Phelps Street, Youngstown, Ohio 44503, for Defendant-Appellant.*

DONOFRIO, J.

This is an appeal from the Court of Common Pleas of Mahoning County, Ohio.

Defendant-appellant, city of Youngstown, brings this appeal on the claim that plaintiff-appellee, George Vukovich, a former mayor, is not entitled to certain vacation and sick pay due to his position as an officer of the city government. The parties submitted stipulations to the trial court as to the dates during which appellee served in his various City capacities. From 1964

to 1976, appellee was the elected clerk of courts; from 1976 to 1980, appellee was appointed clerk of Youngstown city council; and from 1980 to December 31, 1983, appellee was the elected mayor of the city of Youngstown.

Trial was held January 4, 1988. During this proceeding, the parties agreed to bifurcation of the issues. The trial commenced as to the legal question of whether an elected official of the city of Youngstown is to be considered an "employee" for benefit purposes, the issue of damages, if any, being left for a later date.

On June 9, 1988, the trial court issued an opinion holding that elected officials were to be considered employees for fringe benefit purposes. The City appealed to this court, but that appeal was dismissed as untimely due to the fact that the issue of damages was still outstanding in the trial court. A judgment entry was filed by the trial court on or about October 26, 1986 on the issue of damages This appeal timely followed.

Appellant's sole assignment of error states:

"The trial court erred as a matter of law in finding that an elected official of the city of Youngstown is an 'employee' of the City for purposes of calculating fringe benefits."

The thrust of appellant's argument under its assignment of error is that the city of Youngstown is a charter municipality. As such, it is empowered, pursuant to the Ohio Constitution, Article 18, Sections 3 and 7, to enact local legislation which may conflict with other general laws. This means that the City may, but does not have to, enact legislation as regards its employees and officers which conflicts with R.C. Chapter 124 and certain other State statutes The City has in existence a set of codified ordinances which, among other things, provides for the fringe benefits its officers and employees may receive.

In the case at bar, appellee, a former employee of the City who has also served as an elected official of the City, is claiming that the Youngstown Codified Ordinances pertaining to sick leave and vacation benefits for its employees apply to him. Appellee claims that these apply to him not only for his tenure as a regularly appointed clerk of Youngstown city council, but also for his tenure as clerk of courts and mayor, both elected positions. The threshold question for the trial court to decide was whether an elected official of the city of Youngstown is an "employee" of the City for purposes of fringe benefits such as sick leave and vacation accumulations.

Appellant concedes that there is no dispute as to appellee's right to receive credit for his length of service as the elected clerk of courts in regards to benefits. In arriving at this agreement, appellant points out that Section 163.19(a) of the City ordinances states that:

"A person currently employed by and earning vacation credits with the City is entitled to have prior service with the City or any political subdivision of the State credited as service with the City."

This would entitle appellee to carry over credit for his years of service as clerk of courts to his position as an employee of the City as council clerk. In other words, while he could not earn or accrue benefits as clerk of courts, appellee's approximately twelve years in that position would be credited to him for vacation purposes when he was later employed by the City as council clerk.

As vacation entitlement is based on years of service, this would mean that instead of taking two weeks of vacation based on his first-year employment by the City as council clerk, appellee would have earned four weeks of vacation at the end of the year due to the fact that his previous years of service would be credited him for entitlement purposes, pursuant to operation of Section 163.19(b).

Thus, the only issue before us is whether or not the appellee is entitled to accrued vacation and sick leave benefits during his term as mayor of the city of Youngstown. We conclude that he is not so entitled for the following reasons.

We begin an analysis of whether or not he is to be considered as an ordinary employee for such entitlement with a review of the Youngstown Home Rule Charter. The salary, vacation, sick leave, accumulated sick leave, hospitalization, car allowance, and life insurance of the mayor are all items of local self government control.

The Charter distinguishes between "employees" and "officers" or "officials" in several places. In Section 4 of the Charter, it states, "The Mayor shall be the chief executive *officer* of the City" and at no time refers to the Mayor as an employee. (Emphasis added.) In Sections 8, 9, and 10 the Charter distinguishes between "officers" of the City and its "employees." No Charter section refers to the mayor) as an employee. Section 52A, regarding civil service, includes, in its list of those in the unclassified service, "(1) All officers elected by the people." Likewise, Section 69, regarding elections, talks about "elective offices" held by "municipal officials."

Section 18 sets the salary of the mayor with authority for change by an ordinance of council

provided that such ordinance must be passed prior to the beginning of the term of the mayor to be affected thereby. The Charter, ordinances and statutes, distinguish between one who is merely an employee and one who is an "officer" or "official."

While the Codified Ordinances provide that certain benefits inure to only employees (and sometimes not to all employees) and the ordinances make distinctions between employees and elected officials, the ordinances do not unequivocally define these terms. The only definition provided by the Code is contained within Section 163.19(a) regarding vacations, where it states:

"A full-time employee is an employee regularly scheduled on a forty/hour week, or in excess thereof, ***."

The Code itself makes clear, however, that not all full-time workers are "employees," as later Code sections distinguish between full-time employees entitled to earn and accrue vacation, full-time employees who are not entitled to earn and accrue vacation, and elected officials, who are not included specifically within the vacation or sick leave ordinances at all. Clearly, the mayor's position is not a regularly scheduled one on a forty-hour week. At times he may work many hours more and at times some hours less. Section 163.19 of the Codified Ordinance of Youngstown, Ohio governs vacation benefits of the city of Youngstown. It reads, in part:

"163.19 VACATIONS

"(a) Effective January 1, 1974, *each full-time employee of the City,* including full-time hourly rated employees, after completion of one year of service with the City, shall have earned and will be due upon the attainment of the anniversary of the first full year of employment, and annually thereafter, vacation leave with full pay at the rate of pay being earned by the employee at the time of taking the vacation. Prior employment with the City may be used to compute the first full year of employment, and the anniversary date of the employee shall be the anniversary date of the attainment of the first full year of employment with the City." (Emphasis added.)

Ordinance No. 163.05, providing for sick leave benefits, is worded almost identically, providing sick leave benefits only to "full-time" employees of the City. Almost all other benefits granted by the Codified ordinances are similarly worded, granting such benefits only to "employees" of the City. There are two notable exceptions, however.

Section 163.21 of the Codified Ordinances reads:

"163.21 Life Insurance Benefits.

"The City shall assume the full cost of the life insurance benefits *for elected or appointed City officials and employees* who achieve twenty or more years of total service to the City; *such life insurance benefits shall be determined on the same basis as City employees who would be retire from service with the City as elected or appointed officials or as City employees,* the service time in either category of service to be cumulative. The determining factor of such service to be established in a classified position, an appointed non-classified position and/or as an elected official provided there has been twenty years of total service to the City." (Emphasis added.)

This ordinance was enacted on March 7, 1980 to amend the previous ordinance, which gave life insurance benefits to employees only. From this, we can see that the Codified Ordinances of the City do, indeed, distinguish between an "employee" of the City and an "elected or appointed official." This ordinance provides an elected or appointed official with the same life insurance benefits as employees.

The other exception in the ordinances serves to take from certain employees benefits which would otherwise, by ordinance, accrue to them. Section 163.39(b) states that the mayor's cabinet, consisting of seven named positions, "*** shall not be entitled to and are prohibited from accumulating vacation time ***." The ordinance also states at Section 163.39(C) that, while the employees (as they are specifically referred) are serving in one of these positions, "*** their total compensation shall and must be derived from their salaries and benefits as designated by proper ordinances of the legislative authority of the City."

The difference between an employee and public officer is described in 14 Ohio Jurisprudence 3d 580-582, Civil Servants, Section 9:

"Broadly speaking, both public officers and public employees are in public employment, and, for some purposes, such as the public employees retirement system, the term 'public employee,' may be defined by statute to include public officers. It frequently becomes necessary, however, to distinguish between a public office and a public employment, and there are definite distinctions between the two. *** The most important characteristic that distinguishes public office from public employment is that the cre-

ation and conferring of a public office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public, and the exercise of such power within legal limits constitutes the correct discharge of the duties of such office. The power thus delegated and possessed may be a portion belonging sometimes to one of the three great departments and sometimes to another; still it is a legal power that may be rightfully exercised, and it will bind the rights of others and be itself subject to revision and correction only according to the standing laws of the state. Accordingly, a public officer may be distinguished from a public employee in that the former is invested by law with a portion of the sovereignty of the state and is authorized to exercise functions of an executive, legislative, or judicial character."

The distinctions between an employee and a public officer have been dealt with many times by the Attorney General with regard to sick leave and vacation entitlement. While all of the Attorney General's opinions have dealt with Ohio statutes (Chapter 124) and not with municipal ordinances, it must be noted at this point that the City's ordinances with regard to sick leave and vacation are virtually identical to State statutes.

In 1962 O.A.G. 3239, page 667, the Attorney General was asked by the then Mahoning County prosecutor whether unused vacation time may be paid to a deceased county auditor's estate. The Attorney General determined that as only "full-time employees" were allowed to be compensated for such unused vacation time, the pertinent question was whether the county auditor was a county "employee." It was found that he was not. The opinion quotes 44 Ohio Jurisprudence 2d 503, Public Officers, Section 17 (now known as 14 Ohio Jurisprudence 3d 580-582, Civil Servants, Section 9), and finds that as a county auditor is an officer and not an employee, he is "*** not entitled to (or limited to) any particular period of time for vacation leave." 1962 O.A.G. 3239 page 671.

In 1980 O.A.G. 80-057, the Attorney General held the transfer from county employee to county officer to be a "separation" of employment, not a continuance thereof. Relying on 1962 O.A.G. 3425, page 931, the opinion concluded that the clerk of the board of county commissioners is no longer an "employee" when he is appointed county treasurer.

A very recent Ohio Attorney General's opinion, No. 90-14, April 3, 1990, states:

"1. For purposes of R.C. Chapter 124, an 'employee' is any person holding a position subject to appointment, removal, promotion, or reduction by an appointing officer; the term 'employee' does not include an officer who is appointed by the Governor to a post as an appointing authority or to a post on a commission, board, or body that has been granted appointing authority."

Thus, we conclude that if Youngstown city council intended for the mayor to have the fringe benefits as involved in the instant case, they would have done so specifically by ordinance, naming the mayor and the benefits. At trial, Herman "Pete" Starks, former councilman of the city of Youngstown, testified that he believed council's intent was that all ordinance sections relating to fringe benefits applied to the mayor s position. Starks, however, was but one of seven councilmen and his testimony should be weighed accordingly. In the case of *Financial Indemnity Co. v. Cargile* (1972), 32 Ohio Misc. 103, at 106, the court stated:

"We are here involved with a question of the intent of the Legislature. Plaintiff has submitted the affidavit of a former member of the Ohio General Assembly who sponsored the bill which became the act enacting the sections of the code with which we are here concerned. This affidavit seeks to interpret the intent of the Legislature. We believe that the meaning of the act must be determined from the words of the statute itself. The court cannot consider what an individual legislator, even the author of the bill, states he understood them to mean."

For all of the above reasons, we sustain the appellant's assignment of error and, accordingly, reverse the judgment of the trial court as to the appellee's benefits in regard to his tenure as mayor, and affirm the trial court's judgment as to the appellee's service to the city of Youngstown in other capacities.

*Judgment reversed in part and affirmed in part.*

O'NEILL, P.J., concurring.

I have closely read the dissenting opinion filed herein and I find no legal basis expressed therein which would motivate my concurrence.

The dissent poses the question of a mayor being removed from office because of illness for failure to perform his duties. The answer to this

question very simply appears in the Youngstown City Charter. The office of mayor becomes vacant only through death or resignation (Sec. 6-1-A) or through recall (Sec. 74). Very specifically, the charter provides that if the mayor is unable to perform his duties, the president of council shall act in his place (Sec. 6-1). This charter provision places no time limit on the period of a mayor's disability.

Sec. 52 of the Youngstown Charter states very specifically:

"All of the provisions of the Revised Code of the State of Ohio relating to Municipal Civil Service are hereby adopted and made a part of this Charter ***."

Thus, absent a vote of the people, there must be specific compliance with revised code provisions dealing with municipal civil service.

R.C. 124.01(A) reads as follows:

"'Civil service' includes all offices and positions of trust or employment in the service of the state and the counties, cities, city health districts, general health districts, and city school districts thereof."

Very clearly, this statute encompasses the office of mayor.

R.C. 124.01(F) reads as follows:

"'Employee' means any person holding a position subject to appointment, removal, promotion, or reduction by an appointing officer."

This definition does not include the office of mayor.

R.C. 124.38, during tenure of the appellee, reads, in pertinent, as follows:

"Each *employee* in the various offices of the *** municipal and civil service township service *** shall be entitled *** to sick leave ***." (Emphasis added).

Since the mayor, by definition (R.C. 124.01), is not an employee, he is not entitled to sick leave. The city council could not implicitly or explicitly provide sick leave for the mayor, since such action would be contrary to the charter.

As to annual leave (vacation), R.C. 9.44 very clearly excludes the mayor from accruing credit during term.

"A person employed, *other than as an elective officer,* by the state or any political subdivision of the state, earning vacation credits currently, is entitled to have his prior service *** counted as service *** for the purpose of computing the amount of his vacation leave ***." R.C. 9.44.

I concur with the opinion authored by Judge Donofrio.

COX, J., dissenting.

I respectfully dissent.

The distinction between public employees and public officers is merely one as to the exercise of power, but all hold office as a public trust.

The office of Mayor, as in this case, is not on established by the Constitution of the State of Ohio but is one created by the Charter of the City of Youngstown. As such, the office can be and must be regulated by Ordinance of the City of Youngstown and not by Statutes of the State of Ohio.

The Ordinance did not make distinctions between employees as to the type of power that they may exercise in their job.

To hold otherwise would be stating that no elected office holder is ever entitled to sick leave or vacation.

Section 18 of the City Charter of Youngstown governs the office of Mayor and the City Charter does not distinguish this office from that of any other employee save and except that there can be no compensation change during the term of the office.

The ramifications of the majority ruling are too broad. For example, if a mayor had a heart attack and was required to be off the job for six weeks by his physician, would he then be removed front office for failure to perform his duties because he is not entitled to sick leave?

For this possible broad application of the majority ruling, I would affirm the trial court.